NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0278n.06

Case No. 15-1451

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>May 23, 2016<br>DEBORAH S. HUNT, Clerk |

CURTIS COPELAND, )
)
    Petitioner-Appellee, )    ON APPEAL FROM THE
) UNITED STATES DISTRICT
v. ) COURT FOR THE EASTERN
) DISTRICT OF MICHIGAN
DIANE TISEO, et al., )
) **OPINION**
    Respondents-Appellants. )

**BEFORE: COLE, Chief Judge; CLAY and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** After a jury trial, Copeland was convicted of receiving and concealing a stolen motor vehicle. The Michigan Court of Appeals upheld the jury verdict, concluding that the evidence was sufficient to support the conviction. Copeland sought a writ of habeas corpus before the district court, which granted his petition. It was not unreasonable for the Michigan Court of Appeals to conclude that a rational juror could have found Copeland guilty beyond a reasonable doubt. Therefore, we reverse the district court's grant of Copeland's petition.

I.

The statement of facts by the Michigan Court of Appeals, which is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), is as follows:

> At trial, the evidence established that a tip received by police regarding the location of several stolen vehicles resulted in the discovery of a stolen black Chevrolet Impala parked in front of a residence at 3950 Joseph Campau in Detroit. Police determined that the black Impala was stolen because the vehicle identification number (VIN) on the black Impala was assigned to a white Impala.

A subsequent search of the 3950 Joseph Campau residence revealed the presence of men's clothing and an unusual amount of automobile parts. Tierra Hinton, who had tattoos bearing [Copeland's] name and indicating a romantic relationship, and a small child identified as her son were present during the search. Further, a woman who lived next door to the residence at issue testified that she observed [Copeland] coming and going from the home at least two or three times a week since late 2009, and that she always assumed he lived there. She also testified that she did not start observing Hinton until about a year after she first noticed [Copeland], and she assumed Hinton was there to visit [Copeland].

In addition, the prosecution presented the testimony of Rodney Lea, owner of Lea's Auto Body, that he recognized the white Impala, whose VIN was taken and attached to the stolen black Impala, as a vehicle that he bought from a salvage auction in August 2011. In addition, he testified that [Copeland] and Hinton came to his body shop and purchased the white Impala he obtained from the salvage auction. Specifically, he recalled that [Copeland] was the one who actually did all of the talking about the sale of the white Impala and paid him in cash for the Impala, but that the receipt was made out to Hinton. Also, two other employees of the auto body shop from which the white Impala was purchased confirmed that [Copeland] examined the vehicle, negotiated the sale, paid cash for the vehicle, and arranged for the vehicle's transportation.

*People v. Copeland*, No. 311129, 2013 WL 6182646, at \*1–2 (Mich. Ct. App. Nov. 26, 2013) (per curiam) (footnote omitted). The jury convicted Copeland of receiving and concealing a stolen motor vehicle. A divided panel of the Michigan Court of Appeals affirmed Copeland's conviction, concluding that the evidence was sufficient for a rational trier of fact to conclude that the elements were proven beyond a reasonable doubt. *Id.* at \*2.

In 2014, Copeland sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, arguing that the evidence was insufficient to support his conviction of receiving and concealing stolen property. The district court granted the writ. *Copeland v. Brewer*, 99 F. Supp. 3d 754, 756, 761 (E.D. Mich. 2015). It concluded that there was no evidence that Copeland played a role in removing the VIN from the white Impala and placing it on the black Impala, that there was no evidence that Copeland ever possessed the black Impala, and that there was significantly more evidence tying Hinton to the falsified VIN than

there was connecting Copeland to it. *Id.* at 760–61. It reasoned that the scant circumstantial evidence in the case would impermissibly require "stacking inferences" to support a conviction, so the Michigan Court of Appeals' conclusion that there was sufficient evidence to support Copeland's conviction was "contrary to, or an unreasonable application of, *Jackson v. Virginia*[, 443 U.S. 307 (1979)]." *Id.* The State filed a timely notice of appeal. This court granted the State's motion to stay the district court's order granting the writ.

## II.

We review *de novo* a district court's grant of a writ of habeas corpus. *Jensen v. Romanowski*, 590 F.3d 373, 377 (6th Cir. 2009). Though we typically review factual findings for clear error, where the district court "has made factual determinations based on its review of trial transcripts and other court records," we review those factual conclusions *de novo*. *Id.* at 378 (citation omitted).

## III.

The State argues that the district court failed to give the proper deference due under *Jackson* and AEDPA, conducted its analysis using the wrong elements of the offense, and did not fully consider the circumstantial evidence. Copeland responds that the circumstantial evidence in his case amounts only to reasonable speculation, which is insufficient to support a conviction.[1]

---

[1] Copeland also makes much of the fact that the jury acquitted him of the charge of altering the identification of a motor vehicle with the intent to mislead. However, the jury's verdict on that charge is irrelevant to this court's inquiry on the receiving and concealing charge. For one, the alteration charge requires that the defendant be the one to hide or misrepresent the identity of the motor vehicle while, as will be discussed, the receiving and concealing charge allows for conviction if the defendant merely *aids* in the concealment of the vehicle, so the two convictions are not mutually exclusive. Furthermore, even if the two verdicts were inconsistent, because we cannot determine whether the error was in the jury's decision to acquit on the former charge or its decision to convict on the latter, the Supreme Court has cautioned that the sufficiency of the evidence review on the charge for which the defendant was convicted "should be independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984).

Review of the Michigan Court of Appeals' conclusion that the evidence was sufficient for a jury to convict Copeland requires that we apply two layers of deference. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). The first layer of deference is that due to the jury's verdict under *Jackson*, which held that the relevant inquiry in sufficiency of the evidence claims "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. It is the jury's responsibility to determine what conclusions should be drawn from the evidence presented at trial, so when "faced with a record of historical facts that supports conflicting inferences [courts] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 132 S. Ct. 2, 3–4, 6 (2011) (per curiam) (quoting *Jackson*, 443 U.S. at 326); *see also Coleman*, 132 S. Ct. at 2064 (observing the "broad discretion" juries have to draw inferences from the evidence presented at trial); *Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) ("The trier of fact, not the appellate court, holds 'the responsibility . . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" (alteration in original) (quoting *Jackson*, 443 U.S. at 319)). The jury's inferences based on the facts are improper only if they are "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Hence, the constitutional sufficiency review under *Jackson* is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992).

The second layer of deference is due to the state court's decision under AEDPA, which permits habeas relief only if the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this "highly deferential standard," a federal court must give state court decisions "the benefit of the doubt," *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted), and ensure it does not "improperly substitute[] its evaluation of the record for that of the state trial court." *Rice v. Collins*, 546 U.S. 333, 337–38 (2006). Thus, where there are "a number of plausible ways to interpret the record," the court's disagreement with the inferences the state court drew from the record is not sufficient to reverse its findings if the state court's interpretation is plausible. *See Renico*, 559 U.S. at 777–78. Further, the reasonableness of the state court judgment is partially dependent on whether the legal rule being applied is specific, or general. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Thus, in giving proper deference both to the jury verdict and to the state court opinion upholding that verdict, our inquiry is not simply whether we would have found Copeland guilty beyond a reasonable doubt, or even whether any rational trier of fact could have reached that conclusion; rather, we "must determine whether the [Michigan Court of Appeals] itself was unreasonable in *its* conclusion that a rational trier of fact could find [Copeland] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

In determining the "clearly established Federal law" under § 2254(d), we look to the Supreme Court's holdings, rather than its dicta, at the time the state court issued its decision. *Yarborough*, 541 U.S. at 660–61. While circuit precedent may aid in reflecting what has been

clearly established by Supreme Court precedents, *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam), it does not constitute clearly established federal law under AEDPA, *Glebe*, 135 S. Ct. at 431, and cannot be used to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam)).

We must apply these standards "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Under Michigan law, it is a crime for a person to "buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen." Mich. Comp. Laws. § 750.535(7). The Michigan Court of Appeals determined that a conviction under this statute required proof of the following elements:

> (1) that some property was stolen, (2) that the defendant bought, received, concealed, possessed, or aided the concealment of the same, (3) that the property is identified as property previously stolen, and (4) that the defendant had knowledge of the stolen nature of the property at some time during his wrongful course of conduct.

*Copeland*, 2013 WL 6182646, at *1 (quoting *People v. Allay*, 430 N.W.2d 794, 797 (Mich. Ct. App. 1988)). The statute explicitly allows for a conviction for "aid[ing] in the concealment of a stolen motor vehicle." [2] Mich. Comp. Laws § 750.535(7). Copeland disputes only that the second and fourth elements are met.

Though it recited the proper standard, the district court failed to give the deference due under both *Jackson* and AEDPA.

---

[2] The Court of Appeals did not mention the possibility of a conviction for aiding, although the jury was instructed to that effect. The district court also failed to mention an aiding theory.

First, it was not unreasonable for the Michigan Court of Appeals to conclude that there was sufficient evidence that Copeland bought, received, concealed, possessed, or aided the concealment of the stolen vehicle. The district court's decision focused on whether Copeland himself possessed or concealed the stolen black Impala, emphasizing the fact that there was no evidence that Copeland "played any part in removing the VIN plate from the white Impala or placed it on the stolen black Impala." *Copeland*, 99 F. Supp. 3d at 760. However, as noted *supra* note 1, Copeland did not need to be in possession of the stolen vehicle or be the one who actually retagged it for the jury to find the second element was met; he only needed to *aid* in concealing it.[3]

The evidence at trial established that Copeland negotiated for, arranged for the transportation of, and paid cash for a white Impala. The VIN of this same white Impala was later found on a stolen black Impala located in front of a residence which Copeland had frequented for several years, and where the woman with whom Copeland had a romantic relationship was present during the search of the residence. "[A]n unusual amount of automobile parts" were found during this search. *Copeland*, 2013 WL 6182646, at *1. Based on this circumstantial evidence, a rational juror could have inferred that Copeland purchased the white Impala to at least aid someone in concealing[4] the stolen black Impala, regardless of whether he ever came in contact with the black Impala or played any direct role in placing the false VIN on it.

---

[3] Copeland asserts that *aiding* in the concealment of the vehicle was neither the State's nor the Michigan Court of Appeals' theory of the case, and that the State "expressly disavowed an aiding and abetting theory" and thus "waived this argument several times over." CA6 R. at 32, Appellee Br. at 9, 44, 51. While it may be true that such a theory was not explicitly pursued, the jury was plainly instructed that it could convict based on a finding that Copeland aided in the concealment of the stolen vehicle. Our inquiry is not whether any rational trier of fact could have found Copeland guilty beyond a reasonable doubt *based on the prosecution's theory of the case*. *See United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) ("Circumstantial evidence . . . need not remove every reasonable hypothesis except that of guilt." (citation omitted)); *see also Jackson*, 443 U.S. at 317 n.9.

[4] Copeland argues that there is insufficient evidence to prove he played a role in concealing the vehicle because it was "parked in plain view on a public street." CA6 R. at 32, Appellee Br. at 24–25. This narrow definition of "conceal" is inconsistent with state law. The Michigan Court of Appeals has defined "conceal" in the

Likewise, the Michigan Court of Appeals' conclusion that the sufficiency standard was met with respect to the knowledge element was not unreasonable. Copeland frequented the residence where the stolen black Impala was found with the VIN of the vehicle Copeland purchased. Moreover, the residence that he frequented contained a large number of automobile parts, possibly indicating the operation of an illegal chop shop. These facts, taken together, support the inference that Copeland knew the black Impala was stolen. Even if the inferences necessary to support this element are a bit strained, they are not "so insupportable as to fall below the threshold of bare rationality." *See Coleman*, 132 S. Ct. at 2065.

This is a case where more than one plausible inference could be drawn from the circumstantial evidence presented at trial. One *could* infer that though Copeland purchased the white Impala and frequented the residence, littered with automobile parts, outside of which a stolen black Impala with the white Impala's VIN was found, Copeland was an innocent pawn in someone else's scheme to conceal the stolen vehicle. But, the contrary inference drawn from this evidence—that Copeland was the guilty party—is not unreasonable, and we must presume both the jury and the Michigan Court of Appeals resolved any reasonable conflicting inferences in favor of the prosecution. *See Cavazos*, 132 S. Ct. at 6; *Renico*, 559 U.S. at 777–78. Moreover, the standard for sufficiency of the evidence under *Jackson* is a general one, *see Yarborough*, 541 U.S. at 664; *Thompson v. Bock*, 215 F. App'x 431, 436–37 (6th Cir. 2007), so we grant the Michigan Court of Appeals even more leeway in reaching its decision, which

context of section 750.535 to mean "'to hide; cover or keep from sight' or '*to keep secret; avoid disclosing or divulging.*'" *People v. Owen*, 649 N.W.2d 777, 780 (Mich. Ct. App. 2002) (citation omitted) (emphasis added). Consistent with this definition, one may "conceal" an item by merely hiding the true identity of the item, as opposed to hiding the item itself. *See People v. King*, No. 265365, 2007 WL 466048, at *1, *3 (Mich. Ct. App. Feb. 13, 2007) (per curiam) (concluding that operating a chop shop "necessarily" requires receiving *and concealing* a stolen vehicle because it involves "altering, dismantling, reassembling, or in any way concealing or disguising the identity of a stolen motor vehicle"); *People v. Sherrod*, No. 261845, 2006 WL 2872557, at *2 (Mich. Ct. App. Oct. 10, 2006) (per curiam) (concluding that a woman was an accomplice to the *concealment* of a motor vehicle when she renewed the license plate for a vehicle that had been totaled, and placed that license plate on the stolen vehicle, thus "concealing the true identity of the vehicle").

further bolsters the conclusion that its judgment was reasonable. We conclude, therefore, that it was not an unreasonable application of federal law for the Michigan Court of Appeals to find that any rational trier of fact could have convicted Copeland of receiving and concealing a stolen motor vehicle.

IV.

For the foregoing reasons, we reverse the district court's grant of Copeland's petition for a writ of habeas corpus.